

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Case No. CR-S-04-0477-JCM (PAL) |
| vs. | ) | **REPORT OF** |
| JACQUAN LEE RICHARD, | ) | **FINDINGS AND RECOMMENDATION** |
| Defendant. | ) | (M/Suppress - #17) |

This matter was referred to the undersigned for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 on defendant's Motion to Suppress Evidence for Fourth Amendment Violation (#17). The court has considered the motion, the government's Response (#22).

## BACKGROUND

The defendant Jacquan Lee Richard ("Richard") is charged by way of a criminal indictment returned December 1, 2004, with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). The indictment also contains forfeiture allegations. The charge arises out of an arrest by officers of the Las Vegas Metropolitan Police Department ("LVMPD") on September 8, 2004.

Richard was a passenger in a 1998 Jeep Grand Cherokee which was pulled over for a traffic infraction in the parking garage of the Main Street Station Hotel and Casino at 200 North Main Street in Las Vegas, Nevada. The officer who stopped the vehicle, Officer Prager, issued the driver two traffic citations and released the driver and two of the three passengers, detaining the fourth passenger, Richard, who initially identified himself as Thomas Lee Edwards. The driver, David Martin ("Martin"), and the two passengers, Nikole Reeder ("Reeder") and Michael Schneider (Schneider"), were allowed to leave after the officer issued Martin a traffic citation, but Richard was detained at the scene to determine his true identity. While being detained, Richard told Officer Prager that Martin was

1  pandering Reeder, the 17-year-old passenger in the car. As a result, Officer Prager requested assistance
2  and several LVMPD vice officers arrived to investigate Richard's allegations Martin was pandering
3  Reeder. Martin, Reeder, and Schneider were located inside the Main Street Station Hotel and Casino
4  and interviewed. Following the interviews, Martin was arrested on a pandering charge and his vehicle
5  was impounded. Richard was arrested for intimidating Reeder and on a probation violation. After
6  Martin and Richard were taken to the Clark County Detention Center ("CCDC"), Schneider told police
7  that he had seen Richard with a .9mm handgun in the Jeep just before the traffic stop. Based on
8  Schneider's information, the detectives obtained a state search warrant, searched Martin's Jeep Grand
9  Cherokee, and recovered a Glock .9mm handgun in the rear passenger compartment.

10  No fingerprints were recovered from the handgun. However, two days after Richard's arrest, an
11  LVMPD vice detective interviewed Richard at the CCDC. The detective told Richard that a gun had
12  been recovered from Martin's vehicle and that the police had recovered Richard's fingerprints from the
13  weapon. After being told his fingerprints were recovered from the gun, Richard denied he had ever
14  possessed the gun, but made inculpatory statements he seeks to suppress.

15  Richard seeks to suppress the .9mm handgun recovered from Martin's vehicle, statements he
16  made to Officer Prager during his detention, and statements made to the detective at the CCDC two
17  days after his arrest. He argues that his initial detention and arrest violated his Fourth Amendment
18  rights, because he was detained without reasonable suspicion and arrested without probable cause.
19  Thus, he argues the gun and his statements must be suppressed under the fruit of the poisonous tree
20  doctrine. The government opposes the motion, asserting Richard lacks standing to challenge the
21  legality of the search and seizure of Martin's vehicle. While disputing Richard's assertion he was
22  illegally detained, the government asserts the recovery of the weapon, and incriminatory statements
23  made two days later, were not the result of Richard's detention. Conceding that the detective who
24  interviewed Richard falsely told Richard his fingerprints had been recovered from a handgun, the
25  government argues that police deception, without more, does not render a confession involuntary.

## DISCUSSION

27  The Fourth Amendment secures "the right of the people to be secure in their persons, houses,
28  papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth

2

1  Amendment protects reasonable and legitimate expectations of privacy. Katz v. United States, 389 U.S.
2  347 (1967). The Fourth Amendment protects "people not places." Id. Evidence obtained in violation
3  of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the
4  poisonous tree." Wong Sun v. United States, 371 U.S. 471 (1963).

5  **A.   Request for Evidentiary Hearing**

6  The Ninth Circuit has held that an evidentiary hearing on a motion to suppress need only be held
7  if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court
8  to conclude that contested issues of material fact exist. United States v. Howell, 231 F.3d 615, 620 (9th
9  Cir. 2000), citing, United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Harris,
10 914 F.2d 927, 933 (7th Cir. 1990); United States v. Irwin, 613 F.2d 1182, 1187 (9th Cir. 1980); United
11 States v. Carrion, 463 F.2d 704, 706 (9th Cir. 1972) ("Evidentiary hearings need be held only when the
12 moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to
13 conclude that relief must be granted if the facts alleged are proved."). "A hearing will not be held on a
14 defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant
15 must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required."
16 Howell, 231 F.3d at 621, citing, Harris, 914 F.2d at 933. The determination of whether an evidentiary
17 hearing is appropriate rests in the reasoned discretion of the district court. United States v. Santora, 600
18 F.2d 1317, 1320 (9th Cir.), amended by 609 F.2d 433 (1979). The court concludes there are no
19 contested issues of fact material to this motion to suppress that require an evidentiary hearing.
20 Although the parties dispute whether Richard's initial detention violated his Fourth Amendment rights,
21 for the reasons explained below, even if Richard was illegally detained, Richard lacks standing to object
22 to a search of Martin's vehicle. Additionally, the inculpatory statements Richard made to the detective
23 two days after his arrest were not the result of any violation of Richard's Fourth Amendment rights.

24  **B.   Capacity Claim Protection of the Fourth Amendment**

25 Because the Fourth Amendment protects people not places, the "capacity to claim the protection
26 of the Fourth Amendment depends . . . upon whether the person who claims the protection of the
27 Amendment has a legitimate expectation of privacy in the invaded place." Minnesota v. Olson, 495
28 U.S. 91, 95 (1990), citing, Katz v. United States, 389 U.S. 347 (1967); Rakas v. Illinois, 439 U.S. 128,

3

143 (1978). In order to have "standing" or "capacity" to contest the legality of a search or seizure, a defendant must establish that he had a subjective expectation of privacy in the place searched, an expectation society accepts as objectively reasonable. Minnesota v. Carter, 525 U.S. 83, 87-88 (1998), citing, Rakas, 439 U.S. at 143-44 & n.12. The defendant bears the burden of establishing, under the totality of the circumstances, that "the search or seizure violated his legitimate expectation of privacy in a particular place." United States v. Davis, 932 F.2d 752, 756 (9th Cir. 1991), citing, Rawlings v. Kentucky, 448 U.S. 98, 104 (1980). The defendant has the burden of establishing standing, or capacity to claim the protection of the Fourth Amendment. United States v. Dorais, 241 F.3d 1124, 1130 (9th Cir. 2001). See also United States v. Singleton, 987 F.2d 1444, 1449 (9th Cir. 1993).

Richard claims that the police lacked reasonable suspicion to detain him at the scene of the traffic stop, probable cause to arrest him and/or that the duration of his detention was unlawful. Richard reasons: (1) that information he gave the police during his detention following the traffic stop caused the additional investigation; (2) which caused the police to interview Martin, Reeder, and Schneider; (3) which resulted in Martin's arrest; (4) which resulted in Schneider's information to the police that she had seen Richard with a .9mm handgun in the Jeep just before the traffic stop; (5) which resulted in the application for the search warrant which recovered the gun. Relying on United States v. Pulliam, 405 F.3d 782 (9th Cir. 2005), he argues the subsequent search of Martin's vehicle was the fruit of his unlawful detention and that the discovery of the gun and his subsequent statements should, therefore, be suppressed under the fruit of the poisonous tree doctrine. The government concedes that Richard was detained at the scene of the traffic stop but asserts Richard has no standing to challenge either the inventory search of Martin's vehicle or the subsequent search conducted pursuant to a state search warrant the police obtained which recovered the .9mm gun in the passenger compartment.

For purposes of this report and recommendation, the court will assume, without deciding, that Richard was unlawfully detained. However, Richard's moving papers have offered no evidence by affidavit or offer of proof that the initial stop of Martin's vehicle was unlawful. Richard has standing to contest the legality of his own detention. Pulliam, Id. at 787. However, to suppress the gun he must show that the inventory search of Martin's car and subsequent search pursuant to a state search warrant was the fruit of his own unlawful detention. Id.

4

The Pulliam decision Richard relies upon recognize two well recognized principles that limit the reach of the exclusionary rule. The first principle is that "[a] person seeking to exclude evidence allegedly obtained in violation of the fourth amendment must have standing to challenge the illegal conduct that lead to the discovery of the evidence." United States v. Pulliam, 405 F.3d 782, 786, citing Rakas v. Illinois, 439 U.S. 128, 134 (1978). Fourth Amendment rights are personal rights which may not be vicariously asserted. Id. at 133-34. Thus, Richard must show that his reasonable expectation to privacy has been infringed to challenge the search of Martin's vehicle.

The second principle is that the exclusionary rule does not require the suppression of evidence unless the evidence is "in some sense, the product of illegal government activity." Segura v. United States, 468 U.S. 796, 815, quoting United States v. Crews, 445 U.S. 463, 471 (1980) (internal quotations and citations omitted). Thus, the exclusionary rule does not require exclusion of evidence which is the result of admittedly illegal government activity "unless the illegality is at least the 'but for' cause of the discovery." Id. Pulliam rejected the defendant's argument that separate police actions in detaining a car, detaining each of the occupants, and searching the car may be combined to confer standing to challenge the search of property in which the defendant lacks an expectation of privacy.

Applying these principles to this case, Richard does not claim he had any possessory interest in the car Martin was driving and, therefore, had no reasonable expectation of privacy sufficient to permit him to challenge the search of the car. United States v. Pulliam, Id., citing United States v. Twilley, 222 F.3d 1092, 1095 (9th Cir. 2000). The government asserts, and Richard does not dispute, that Martin's car was not towed and searched until after Martin was arrested. The .9mm gun was not recovered during the initial inventory search of Martin's vehicle. The gun was only discovered after Schneider was questioned and told the LVMPD vice detectives that she had seen Richard with a gun in the car prior to the traffic stop. The government asserts, and again, Richard does not dispute, that LVMPD vice detectives obtained a state search warrant based on Schneider's information, and that the gun was recovered while executing that state search warrant. When Richard was questioned in the Clark County Detention Center two days following his arrest, he denied ownership of the gun that was recovered from Martin's car. However, even if he had claimed ownership or possessory interest in the gun, it would not confer standing upon him to seek its suppression. Rawlings v. Kentucky, 448 U.S.

98, 105 (1980). Richard has failed to demonstrate that the search of Martin's vehicle was the result of his unlawful detention.

In short, Richard cannot show that the gun would not have been recovered from Martin's car "but for" his unlawful detention. As such, there is no causal connection between his detention and the evidence found in the car after the state search warrant was obtained.

### C.   **Fruit of the Poisonous Tree Doctrine**

It is well established that the Fourth Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches and seizures. Wong Sun, 371 U.S. at 484-88. Evidence obtained by such illegal action of the police is "fruit of the poisonous tree," warranting application of the exclusionary rule if, "granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." United States v. Crawford, 372 F.3d 1048, 1054 (9th Cir. 2004) (en banc), citing, Brown v. Illinois, 422 U.S. 590, 599 (1975). The exclusionary rule requires a causal connection between the illegal conduct and the evidence sought to be suppressed. Crawford, 372 F.3d at 1054. "When there is a close causal connection between the illegal seizure and the confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the future, but also use of the evidence is more likely to compromise the integrity of the courts." Dunaway v. New York, 442 U.S. 200, 218 (1979). Whether the twin aims of deterrence and judicial integrity warrant application of the exclusionary rule depends largely on the facts of each case. Brown, 422 U.S. at 603.

In determining whether the taint has been sufficiently purged, the Ninth Circuit asks "whether, granting establishment of the primary illegality, the evidence . . . has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." United States v. Millan, 36 F.3d 886, 890 (9th Cir. 1994) (internal quotation marks omitted).

Confessions or admissions made after the police confront a suspect with evidence obtained through an illegal search or seizure are fruits of the poisonous tree and must be suppressed. Ruiz v. Craven, 425 F2d 235, 236 (9th Cir. 1970). See also United States v. Grubbs, 377 F.3d 1072, 1079 (9th Cir. 2004); United States v. Hotal, 143 F.3d 1223, 1228 (9th Cir. 1998); United States v. Howard, 828

1 F.2d 552, 556 (9th Cir. 1987). As indicated, the court has assumed, without deciding for purposes of
2 this report and recommendation, that Richard's detention during the traffic stop was unlawful. Richard
3 does not assert, nor does the government indicate in its responsive papers, that Richard made any
4 incriminating statements relevant to this prosecution for felon in possession of a firearm which the
5 government seeks to admit in evidence in this case. Richard seeks to suppress the inculpatory
6 statements he made to Detective Stanton in the Clark County Detention Center two days after his
7 arrest. Richard does not assert the statement he gave to Detective Stanton at the Clark County
8 Detention Center was involuntary. Rather, he argues the statements must be suppressed as the fruit of
9 an unlawful search of Martin's vehicle which recovered the .9mm gun which he was confronted with in
10 the interview. Additionally, he argues that because Detective Stanton lied to him about finding his
11 fingerprints on the gun, the statement was obtained in a "coercive and deceitful manner." As indicated,
12 Richard lacks standing to complain about the search of Martin's vehicle. The testimony or evidence the
13 government seeks to introduce were not the result of Richard's unlawful detention, but the search of
14 Martin's vehicle. Therefore, the statements he made two days later were not the product of an unlawful
15 search and need not be suppressed under the fruit of the poisonous tree doctrine.

16 Finally, Richard argues his statements at the Clark County Detention Center two days following
17 his arrest should be suppressed because Detective Stanton lied to him about his fingerprints being found
18 on the gun. The government correctly points out that police deception, without more, does not render a
19 confession involuntary. See e.g., United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). See
20 also United States v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003) ("A confession accompanied by
21 physical violence is per se involuntary, while one accompanied by psychological coercion is not.")
22 Richard has alleged nothing more than that Detective Stanton deceived him about his fingerprints being
23 on the gun.

## CONCLUSION

25 Richard has not met his burden of establishing standing or capacity to claim the protection of
26 the Fourth Amendment for the search of Martin's vehicle. As a mere passenger in the vehicle, he did
27 not have an expectation of privacy society accepts as objectively reasonable. Additionally, assuming,
28 without deciding, that Richard was unlawfully detained during the traffic stop, his detention was not the

"but for" cause of the search of Martin's vehicle. The search which recovered the gun Richard seeks to suppress was found after state police obtained a state search warrant based on Schneider's statement. There is simply no nexus between Richard's alleged unlawful detention and the recovery of the firearm from Martin's vehicle. Similarly, Richard's statement to Detective Stanton two days after his arrest was not tainted by any violation of Richard's Fourth Amendment rights and suppression is not required under the fruit of the poisonous tree doctrine. For all of the foregoing reasons,

**IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that Richard's Motion to Suppress (#17) be DENIED.

Dated this 22nd day of September, 2005.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE